UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 9:11-MC-81109-KAM

CITIGROUP GLOBAL MARKETS
HOLDINGS, INC., et al.,

    Petitioners/Movants,

vs.

RONALD PERRY et al.,

    Respondents.
_____/

**PETITIONERS' RESPONSE TO RESPONDENTS' MOTION TO VACATE
ARBITRATION AWARD WITH INTEGRATED MEMORANDUM OF LAW**

Petitioners, Citigroup Global Markets Holdings, Inc. and Citigroup Global Markets, Inc. (collectively, "Citigroup"), by and through the undersigned counsel, respectfully submit their Response to Respondents' Motion to Vacate Arbitration Award, with Memorandum of Law.

**I.     INTRODUCTION**

Respondents, Ronald Perry and John Perry (hereinafter, "the Perrys"), filed their Motion to Vacate Arbitration Award (DE 19) on December 22, 2011. The Motion to Vacate is woefully unmeritorious and disingenuous throughout. Starting with the obvious omission of a memorandum of law (because there is no law supporting the Perrys' vacuous arguments), it does not even come within hailing distance of reaching the exacting standards necessary to vacate an arbitration award. It is simply no more and no less than an "attempt to salvage [an] arbitration loss[ ] through litigation that has no sound basis in the law applicable to arbitration awards"[1] and should be summarily denied.

---

[1] Quotation from B.L. Harbert Int'l v. Hercules Steel Co., 441 F.3d 905, 914 (11th Cir. 2006), abrogated on other grounds, Frazier v. Citifinancial Corp., 604 F.3d 1313 (11th Cir. 2010). The Eleventh Circuit has soundly condemned post-award litigation by parties who do not "have an objectively reasonable belief that [they] will prevail." Id. at 913-14.

## II.     THE PERRYS' PROCEDURAL SHORTFALLS

Parties seeking vacatur of an arbitration award have the burden of setting forth and establishing sufficient grounds to vacate in their moving papers and to submit the arbitration record and any supplemental materials in support of the motion. In conjunction, the Local Rules mandate that a motion shall include a memorandum of law as well as any materials the movant wants the court to consider. The Perrys fall short of complying with these well-known procedural requirements--the Motion to Vacate is just another contrivance to stall judgment on the arbitration award.

### A.     No Memo of Law

Local Rules 7.1(a)(1) and 7.1(a)(3) state that "[e]very motion when filed shall incorporate a memorandum of law citing supporting authorities" and that any affidavits or other materials that a party wants the Court to consider must be submitted with the motion. The Perrys' Motion to Vacate ignores both rules. It is only a narration of factual allegations that the Perrys assert as grounds for vacatur under certain sections of the Florida Arbitration Code. Not one case is cited. Not one standard is mentioned. The Perrys' counsel's disregard of local procedure is sandbagging (at best) and unfairly prejudices Citigroup by constraining Citigroup to disprove the legal validity of the Perrys' Motion at the outset. Counsel's disregard for these basic tenets of local and vacatur procedure should not be countenanced. He has appeared in 23 cases in the Southern District (see attached Exhibit "A") and in 64 cases in the Middle District, which also requires a "memorandum of legal authority in support" of any motion, M.D. Fla. L.R. 3.01(a).

### B.     Inadequate Motion to Vacate

The rules of notice pleading do not apply to a motion to vacate an arbitration award. See O.R. Securities, Inc. v. Professional Planning Assocs., Inc., 857 F.2d 742, 745 (11th Cir. 1988).

Instead of a complaint or petition, a request for vacatur is made by motion which requires particularity in presenting the grounds therefore. Id. "The burden is on the party requesting vacatur of the award to prove one of [the four statutory bases for vacatur]." Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1289 (11th Cir. 2002);[2] see also Wall Street Assocs., LP v. Becker Paribus Inc., 27 F.3d 845, 849 (2nd Cir. 1994) ("the policy of the [Federal Arbitration Act – "FAA"] requires that the award be enforced unless one of [the statutory] grounds is affirmatively shown to exist") (emphasis added). Thus, parties seeking vacatur "have the burden of setting forth and establishing sufficient grounds to vacate in their moving papers." Boll v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 2004 WL 5589731, at *4 (S.D. Fla. 2004) (Johnson, Mag. J.)[3]; see also, Marshall & Co., Inc. v. Duke, 941 F. Supp. 1207, 1210 (N.D. Ga. 1995), aff'd 114 F.3d 188 (11th Cir. 1997), cert. denied, 522 U.S. 1112 (1998) ("the party seeking vacatur bears the burden of setting forth sufficient grounds to vacate the award in his moving papers at the outset").

Where the movant seeks vacatur by a filing that contains only conclusory statements--devoid of any argument or legal or factual support--the court may properly reject it because it is not, in reality, a motion to vacate at all (or at least, not one that that meets the requirements of the FAA). See Kruse v. Sands Bros. & Co., 226 F. Supp. 2d 484, 486-87 (S.D.N.Y. 2002) (declining to treat "counter-petition to vacate" as a motion to vacate where the counter-petition consisted of nine paragraphs containing only conclusory statements, and was, on the whole, devoid of any argument or legal or factual support). Here, similarly to the movant in Kruse, the Perrys' Motion to Vacate is devoid of any legal, factual, or evidentiary support for its allegations of arbitrator impropriety and

---

[2] The Riccard Court also mentioned non-statutory grounds for vacatur. These grounds are no longer available in the Eleventh Circuit. Frazier v. CitiFinancial Corp., LLC, 604 F.3d 1313, 1322-24 (11th Cir. 2010).

[3] Adopted in full, 2004 WL 5599306 (S.D. Fla. 2004) (Paine, J.).

fraud.  The Perrys may have titled their Motion as a motion "to Vacate Arbitration Award" but it fails to meet the standards required by the FAA.

### C. Failure to Provide Arbitration Record

The party moving for vacatur has the obligation to submit the arbitration record and any supplemental materials in support.  Paper, Allied-Industrial v. S.D. Warren Co., 382 F. Supp. 2d 130, 139-40 D. Maine 2005) (collecting cases); Home Ins. Co. v. RHA/Pennsylvania Nursing Homes, Inc., 127 F. Supp. 2d 482, 487 (S.D.N.Y. 2001) ("a party seeking vacatur bears the burden of providing the reviewing court with a record sufficient to permit the exercise of informed judgment in accordance with the applicable scope of review"); see also Youngs v. American Nutrition, Inc., 537 F.3d 1135, 1143 (10th Cir. 2008) (party seeking vacatur has burden to provide court with supporting evidence).  Consistent with the foregoing, Local Rule 7.1(c)(3) requires that affidavits or other materials that a party wants the Court to consider in support of a motion must be submitted with the motion.

The penalty for failing to provide the hearing record falls on the Perrys.  See Paper, 382 F. Supp. 2d at 140-41 (penalty for failure to provide court with arbitration hearing record to support record-dependent vacatur arguments falls on party seeking vacatur).  Here, the Perrys have *not even attempted* to submit evidence to prove their *allegations* of arbitrator misconduct at the hearing by providing this Court with a copy of the hearing record.  As the party with the heavy burden of proof, their (purported) Motion to Vacate fails on all grounds for which the record is essential, including their allegations of arbitrator misconduct alleged at paragraphs 27 through 29.

### D. Unnecessary Delay

Counsel's disregard of local and FAA vacatur procedure is but one more indication of the Perrys' unnecessary delay and obstruction that they have disbursed across separate three courts in

their attempt to dodge payment of the award.[4]  In an Emergency Motion to Stay Confirmation of Arbitration Award (DE 14) filed on November 30, 2011 in this Court, the Perrys requested a stay of this Court's ruling on Citigroup's Motion to Confirm Arbitration Award (DE 1) to December 29, 2011.  In their Emergency Motion, they represented to this Court that they "intend[ed] to file a motion to vacate [and] **are preparing same** …."  (See DE 14, ¶ 11, bold emphasis added).  Three weeks later--when they actually filed their Motion to Vacate--they filed the exact same Motion that they filed sixty-nine days earlier in state court to attempt (at that time) to delay this Court's decision on Citigroup's Motion to Confirm Arbitration Award.  (Compare DE 9-1, state court Petition to Vacate, with DE 19, Motion to Vacate).[5]  Clearly, the Perrys' purpose is to perpetuate "unnecessary delay."

### III.     MERITLESS MOTION TO VACATE

As set forth above, the Perrys have the burden to establish and prove the grounds for vacatur in their moving papers and submissions.  They have inexcusably failed to do that.  Citigroup does not have the obligation to disprove the Perrys' unsupported allegations.

#### A.     The FAA Governs

"Any case 'involving' interstate commerce where arbitration is at issue … will be governed by the Federal Arbitration Act."  Deitchman v. Bear Sterns Secs. Corp., 2007 WL 4592238, at *3 (S.D. Fla. 2007) (Marra, J.) (citing Allied-Bruce Terminex Sos., Inc. v. Dobson, 513 U.S. 265

---

[4]  Recitals of the Perrys' tortured post-award litigation in--and multiple spurious arguments presented to--three courts are set forth in Citigroup's filings at docket entries 10, 12, and 17.  By way of example, the Perrys stalled proceedings in this Court and the Middle District by arguing that Citigroup's citizenship was in Florida because it registered a fictitious name with the Florida Secretary of State.  See DE 9, pg. 2 (Perrys' filing); DE 10, pgs. 5—7 (Citigroup's response); DE 11, pgs. 1-3 (Perrys' repetition of meritless fictitious name argument eight days after Citi's response showing clear legal infirmity of argument); DE 12, pgs. 3-7 (Citi's second rebuttal); Perry, et al. v. Citigroup, et al., in the United States District Court for the Middle District of Florida, case number 8:11-cv-02451-SDM-TBM, DE 6, 7, and 9 (blending same fictitious name-corporate citizenship-removal arguments).  Citigroup had to draft and file responses to all but one of these specious filings.

[5]  The only difference is that the Perrys deleted paragraph 1 of the state court filing.

(1995)). "The term 'involving commerce' in section 2 of the FAA, its 'coverage provision,' is intended to 'signal the broadest permissible exercise of Congress' Commerce Clause power.'" Cortina v. Citigroup Global Markets, Inc., 2011 WL 3654496, at *1 (S.D. Cal. 2011).[6] "There is no question [that] the financial industry bears on interstate commerce in a substantial way." Id. Where there is a dispute between a broker and a nationwide financial industry firm over a promissory note that provides for arbitration, interstate commerce is "involved" and the FAA governs the arbitration itself and post-award vacatur proceedings. See id. at 1-2. Like the Cortina case, the instant vacatur proceeding involves a dispute between brokers and large financial industry firms over promissory notes[7] that provided for arbitration of any controversy relating to the notes[8] thus, the instant proceedings are governed by the FAA.

### B. Vacatur Standards

"There is a presumption under the FAA that arbitration awards will be confirmed, and 'federal courts should defer to an arbitrator's decision whenever possible.'" Frazier v. CitiFinancial Corp., LLC, 604 F.3d 1313, 1321 (11th Cir. 2010). The purpose of the FAA is "to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that is speedier and less costly than litigation." AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc., 508 F.3d 995, 1001 (11th Cir. 2007). "Because arbitration is an alternative to litigation, judicial review of arbitration decisions is among the narrowest known to law." Id. "The burden on the party

---

[6] Quoting New Regency Productions, Inc. v. Nippon Herald Films, Inc., 501 F.3d 1101, 1104 (9th Cir. 2007) and Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003).

[7] After borrowing more than $2.1 million from Citigroup, the Perrys resigned and subsequently received even larger loans from their new employer, but then refused to satisfy the outstanding balance of their existing Citigroup loans.

[8] See DE 6-3 (promissory notes mandating arbitration of disputes (¶ 9) executed in New Jersey and Florida by the Perrys); DE 6, ¶¶ 2-6 (alleging Perrys' Florida citizenship and Citigroup's New York citizenship); DEs 6-1 and 9-8 (Financial Industry Reg. Authority "FINRA" arbitration award reciting arbitration of dispute over promissory notes).

seeking to vacate an arbitration award is … very heavy." Aviles v. Charles Schwab & Co., 2010 WL 1433369, at *7 (S.D. Fla. 2010) (Zloch, J.), aff'd. 435 F.3d 824 (11th Cir. 2011).

Vacatur is limited to the four grounds enumerated in the FAA:[9]

    (1)  where the award was procured by corruption, fraud or undue means;

    (2)  where there was evident partiality or corruption in the arbitrators, or either of them;

    (3)  where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

    (4)  where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). "Review pursuant to these statutory grounds is limited, as arbitrators do not act as junior varsity trial courts where subsequent appellate review is readily available to the losing party." Cat Charter, LLC v. Schurtenberger, 646 F.3d 836, 842-43 (11th Cir. 2011) (internal punctuation omitted).

"A party initiates judicial review of an arbitration award … by filing … a motion to vacate … the award." Booth v. Hume Pub. Co., 902 F.2d 925, 932 (11th Cir. 1990). "The [FAA's rules requiring a vacatur application to be made by motion] further[s] the Act's policy of expedited judicial action because they prevent a party who has lost in the arbitration process from filing a new suit in federal court and forcing relitigation of the issues." Id. "[T]he district court need not conduct a full hearing on a motion to vacate or confirm; such motions may be decided on the papers without oral testimony." Id.

---

[9]  Frazier, 604 F.3d at 1322-24.

### C. Disagreement with the Result

The Perrys disagree with the result of the arbitration.[10] Their arguments relating to the Joint Venture Agreement ("JVA") between Citigroup and Morgan Stanley are no more than thinly-veiled assertions that the arbitrators reached the wrong result. Such "arguments concerning the merits are irrelevant to the determination of whether there are statutory grounds within § 10(a) under which the arbitration award should be vacated." Hamel-Schwulst v. Country Place Mortgage Ltd., 406 Fed.Appx. 906, 914 (5th Cir. 2010) (unpub. op.); see also Medicine Shoppe Int'l, Inc v. Turner Investments, Inc., 614 F.3d 485, 488 (8th Cir. 2010) (under the FAA, "[c]ourts have no authority to reconsider the merits of an arbitration award.").

The Perrys Motion to Vacate argues that, pursuant to the JVA, Citigroup did not own the notes and waived (or released) its right to payment. **The Perrys submitted these arguments and supporting evidence to the arbitrators**. See Arbitration Record excerpt—closing argument of Perry attorney, Michael Taaffe, attached hereto as Exhibit "B:"

Page/Lines.

| | |
|---|---|
| 40/10-15 | The number one issue in this case is the note. [The Perrys are upset] [b]ecause CitiGroup does not own the note. |
| 40/16-20 | The Note has been assigned to Morgan Stanley/Smith Barney, the joint venture, pursuant to the publicly-filed joint venture agreement, which is in the record, in evidence in this case, and I will show you exactly where it is. |
| 40/21-25 | Not only has it been assigned, a collection of notes against employees has been waived pursuant to the joint venture agreement. Let me show you those sections. If you would turn to the joint venture agreement, I think it's Exhibit Y. |

---

[10] In short, upon accepting employment with Citigroup, the Perrys borrowed more than $2.1 million from Citigroup. They resigned less than two years later and received even larger loans from their new employer … and then refused to satisfy the outstanding balance of their Citigroup loans. The arbitrators held that they had to pay the outstanding balance of their loans from Citigroup, with interest. See DE 1-4 and DE 9-8.

> 41/1-5   The first is the – I'll wait until we get there.  Exhibit Y.  And at the same time if you get Exhibit Z, I think they are a joint exhibit.  One is a two-page press release and the other is the actual joint venture agreement.[11]

The Perrys' counsel then presented, <u>at length</u>, to the arbitrators, the same arguments made to this Court regarding the JVA and the enforceability of the notes,[12] including: those relating to page 40, provision 2.4(f) of the JVA quoted at paragraph 13 of the Perrys' Motion to Vacate[13] and the affidavit of James Goddard.[14]

"It has been the rule for some time that Courts do not vacate an arbitration award based on the merits of a party's claim."  <u>Hamel-Schwulst</u>, 406 Fed.Appx. at 914.  For example, more than twenty-four years ago, the Eleventh Circuit held:

> The record of the arbitration proceedings in this case shows that the issue of successor liability was clearly presented to the arbitrators and the arbitrators declined to state reasons for their conclusions. This ends the inquiry.  The district court

---

[11] The exhibits that Perry attorney Taaffe refers to in his arbitration closing argument are the same exhibits that are attached to the Perrys' instant Motion to Vacate as Exhibits A and B.

[12] Compare Exhibit B hereto, arbitration record excerpt of Perry attorney Taaffe's closing argument, pages 43, line 3 (hereinafter, "pg/ln") through 56/12 and the Perrys' Motion to Vacate, ¶¶ 5-26.

[13] See Exhibit B hereto, 43/3 though 56/12.

[14] See Exhibit B hereto, 47/13 through 49/25, 50/10 through 51/10, 51/22 through 52/12, 53/10 through 56/6.  It bears noting that this affidavit was not even received into evidence (See Exhibit B, 52/12-13, 56/3-12) although the memorandum of law to which it was attached was accepted by the arbitrators.  Moreover, even if it had been received into evidence, an arbitrator's admission of evidence is not a ground for vacatur.  See 9 <u>U.S.C.</u> § 10(a).  Further, Citigroup did not even need to put the original note into evidence in this FINRA arbitration because the copy-original distinction is a rule of evidence found in the Florida Evidence Code (Rule 90.953, Florida Evidence Code) and FINRA arbitrations are not bound by the rules of evidence.  <u>Deitchman</u>, 2007 WL 4592238, at *3; Rule 13604(a), FINRA Code of Arbitration Procedure for Industry Disputes  ("The panel will decide what evidence to admit.  The panel is not required to follow state or federal rules of evidence.").  In addition, the Perrys' counsel was aware of the lost note issue and filed a brief on that issue seventeen months before the arbitration concluded.  See Motion to Vacate, ¶¶ 7-8.  He was presumably also aware of the JVA long before the September 2011 hearing sessions because he introduced the JVA into evidence at the start of those sessions.  See Motion to Vacate, ¶¶ 11-12.  However, the Perrys' counsel never requested any Orders of Appearance from the arbitrators for any witnesses to support the Perry's theories that Citigroup did not own the notes or that the notes had been transferred or waived/released, which were affirmative defenses (see Exhibit B, pgs. 51-52) that the Perrys had the burden of proving.  FINRA Rule 12513 permits the arbitrators to order the appearance of any employee of a FINRA member (such as Citigroup) upon a motion of a party. (See Exhibit "C" hereto).  Last, it is undisputed that John Perry received the loan referred to in the lost-original note and failed to repay it.

9

> properly denied discovery of the arbitrators and of the merits of O.R.'s claims. Furthermore, O.R. cannot be permitted to relitigate the merits of its claim.

O.R. Securities, Inc. v. Professional Planning Assocs., Inc., 857 F.2d 742, 748 (11th Cir. 1988). It is also axiomatic that an arbitration award will not be vacated based on the arbitrators' (alleged) factual errors or legal errors[15] and, in the absence of proof of one of the four statutory grounds for vacatur, the arbitrators' decision will be confirmed.[16] However, the Perrys try to circumvent these rules barring review of the merits of the arbitration and the arbitrators' factual/legal determinations by appending the end of their JVA/affidavit argument with an assertion that Citigroup's arbitration position on the JVA and affidavit "constitute[d] fraud as well as well as undue means … which was materially related to the enforcement of the notes." Motion to Vacate, ¶ 26. It is obvious from a review of the Motion and the arbitration record that the Perrys appended their JVA/affidavit argument with a recognized ground for vacatur to try to entice this Court into a review the merits of the arguments that the Perrys made to the arbitrators. The Eleventh Circuit recently reviewed a similar vain attempt by a party to glaze its illegitimate arguments with the terminology of a enumerated ground for vacatur:

> [Appellant] contends that the award of expert fees exceeded the [arbitration] panels powers because federal law … would prohibit full recovery of expert fees …. Similarly, it argues that the [arbitration] panel exceeded its powers to award prejudgment interest because Florida law prohibits that recovery. These points on appeal essentially involve the same argument: the panel exceeded its powers by acting contrary to the law. We cannot, however, review the panel's award for

---

[15] See Great American Ins. Co. v. Moye, 733 F. Supp. 2d 1298, 1301 (M.D. Fla. 2010); Francis v. Landstar Sys. Holdings, Inc., 2009 WL 4350250, at *6 (M.D. Fla. 2009) ("neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the FAA") (internal punctuation omitted); Mays v. Lanier Worldwide, Inc., 115 F. Supp. 2d 1330, 1347 (M.D. Ala. 2000); Verzura v. Surfside Ocean, Inc., 708 So. 2d 994, 996 (Fla. 3d DCA 1998) ("The law is clear that awards made by arbitration panels cannot be set aside for mere errors of judgment either as to the law or as to the facts"); Affiliated Marketing, Inc. v. Dyco Chemicals & Coatings, Inc., 340 So. 2d 1240, 1242 (Fla. 2d DCA 1976) ("The arbitrator is the sole judge of the evidence and the weight to be given to it"), cert. denied, 353 So. 2d 675 (Fla. 1977); see also White Springs Agricultural Chemicals, Inc. v. Glawson Investments Corp., 660 F.3d 1277, 1283 (11th Cir. 2011) (under the FAA, a court cannot review the legal merits of an arbitration award).

[16] E.g., Medicine Shoppe, 614 F.3d at 488.

>   underlying legal error.  Even though [Appellant] presents in argument in terms of the
>   FAA, it asks us to do what we may not—to look to the legal merits of the underlying
>   award.

White Springs Agricultural, Inc. v. Glawson Investments Corp., 660 F.3d 1277, 1282-83 (11th Cir. 2011).

Even if the Perrys' characterization of their argument is assumed, their "fraud and undue means" argument fails.  "The Eleventh Circuit follows a three-part test to determine whether an arbitration award has been obtained by fraud or undue means: (1) Plaintiff must produce clear and convincing evidence (2) of fraud that was undiscoverable through the exercise of due diligence at arbitration (3) which materially related to an issue in the arbitration." Liberty Securities Corp. v. Fetcho, 114 F. Supp. 2d 1319, 1322 (S.D. Fla. 2000) (Moore, J.).  Liberty Securities was considerably similar to the instant case.  The underlying arbitration turned, in part, on whether the firm was vicariously liable for the conduct of its employee.  After losing the arbitration with its customer, the firm complained that the customer had improperly introduced a business card demonstrating the employment status of the defalcating employee and that the customer misled the arbitrators as to how she received the card. Id. at 1321-22.

>   None of this conduct was unknown to the Arbitrators; in fact, [the firm] quotes
>   extensively from the transcript relevant discussion between the parties and the Panel
>   on this issue.  Nowhere does [the firm] allege any newly discovered undue means or
>   fraud by [the customer].  Vacatur is precluded where the arbitrators had before them
>   all material information relating to the alleged undue means. *See Scott v. Prudential
>   Securities, Inc.*, 141 F.3d 1007, 1015 n.16 [11th Cir. 1998].  The Panel had the
>   opportunity to consider all of the above allegations of misconduct and apparently did
>   so.

Id. at 1322.  See also, A.G. Edwards & Sons, Inc v. McCollough, 967 F.2d 1401, 1404 (9th Cir. 1992) ("where the fraud or undue means is not only discoverable, but discovered and brought to the attention of the arbitrators, a disappointed party will not be given a second bite at the apple"), cert. denied, 506 U.S. 1050 (1993).

Like Liberty Securities, every aspect of the *alleged* undue means that Citigroup *allegedly* employed at the arbitration was known to the arbitrators and was presented to them. (Compare Exhibit B hereto, arbitration record excerpt of Perry attorney Taaffe's closing argument, 43/3 through 56/12 and the Perrys' Motion to Vacate, ¶¶ 5-26). Accordingly, the Perrys' undue means argument is precluded.[17] In addition, the Perrys' fraud and undue means argument falls because they do not show (or even allege) that any of the foregoing was unknown or undiscoverable to them at the time of the arbitration. See Liberty Securities, 114 F. Supp. 2d at 1322 (acts of fraud or undue means must have been undiscoverable through the exercise of due diligence at the arbitration); AIG Baker, 508 F.3d at 1001 ("a court cannot vacate an arbitration award for fraud based on information available before or during the arbitration that the parties, through lack of due diligence, failed to discover").[18]

Last (and most importantly), the Perrys' fraud and undue means argument fails because they have not even identified any acts of fraud or undue means (much less shown it by clear and convincing evidence). "The term 'undue means' must be read in conjunction with the word 'fraud' and 'corruption' and thus requires proof of intentional misconduct." Liberty Securities, 114 F. Supp. 2d at 1321-22. "Undue means, warranting a vacatur of award, includes measures equal in gravity to bribery, corruption, or physical threat to an arbitrator; 'no court has ever suggested that the term 'undue means' should be interpreted to apply to the submission of evidence that is merely legally objectionable." Id. Here, the Perrys simply complain that Citigroup called no witnesses "to rebut

---

[17] See also, Sorren v. Kumble, 578 So. 2d 836 (Fla. 3d DCA 1991) ("'undue means' does not cover a circumstance where evidence is offered to the arbitration panel during its proceedings").

[18] Further, as set forth above at footnote 14, the Perrys' counsel was aware of the lost note and JVA-related issues at least seventeen months before the arbitration concluded. However, he never requested any Orders of Appearance from the arbitrators for any witnesses to support the Perrys' theories that Citigroup did not own the notes or that the notes had been transferred or waived/released, both of which were affirmative defenses that Perrys had the burden to prove. Moreover, it has never been disputed that John Perry received the loan and failed to repay it.

the clear terms of the [JVA]" and, instead of witnesses, offered an affidavit.[19]  Motion to Vacate, ¶ 24.  The Perrys' complaints concern objections to evidence and the arbitrators' resolution of contested issues of fact and thus, do not constitute procurement of an award by "undue means."

As set forth above, the Perrys' arguments relating to the JVA are simply a repetition of the arguments they made to the arbitrators.  Having lost in arbitration, they invite this Court to review the merits of that result.  Mischaracterizing their arguments as being based on fraud and undue means is transparently disingenuous and, in any event, collapses under analysis.  Accordingly, the Perrys are not entitled to vacate the arbitration award based on grounds of fraud or undue means.

### D. Disagreement with Arbitrator

The Perrys disagree with the result of the arbitration so they allege that the arbitration chairperson was over-involved with questioning witnesses and openly expressed his views.  The Perrys do not favor this Court with even a shred of supporting evidence.  They do not provide a record.  They do not describe a single instance.  The Perrys have the obligation to provide the arbitration record to support their allegations of arbitrator misconduct and their failure to do so is enough to deny their Motion to the extent it is based on allegations of dissatisfaction with the arbitrator.  See Lew Lieberman & Co., Inc v. Randle, 85 F. Supp. 2d 123 (E.D.N.Y. 2000), passim ("the lack of a complete record alone is enough to require rejection of the [party seeking vacatur's] position")[20] and section II(C) above.

---

[19] Of course, as set forth above at footnote 14, the Perry's counsel was aware of the lost note and JVA-related issues at least seventeen months before the arbitration concluded but never requested any Orders of Appearance from the arbitrators for any witnesses to support the Perrys' theories that Citigroup did not own the notes or that the notes had been transferred or waived/released, both of which were affirmative defenses that Perrys had the burden to prove.

[20] See also Paper, 382 F. Supp. 2d at 140-41 (penalty for failure to provide court with arbitration hearing record to support record-dependent vacatur arguments falls on party seeking vacatur).

As set forth above in sections II(A), II(B), and II(C) above, the Perrys also have the obligation to establish the grounds for their Motion to Vacate in their moving papers. Citigroup does not have the obligation to negate their unsupported allegations, legally or factually. In any event, the applicable legal standards discussed below indicate the high hurdles the Perrys would have to surmount to establish their complaints about the arbitrator as one of the grounds for vacatur.

"Bias" (as the term applies in a vacatur proceeding) "must be 'direct, definite and capable of demonstration rather than remote, uncertain, and speculative" and the party seeking vacatur has a heavy burden to establish specific supporting facts. Aviles, 2010 WL 143369, at *6; see slso Prudential-Bache Securities, Inc. v. Shuman, 483 So. 2d 888, 889 (Fla. 3d DCA 1986) ("it is incumbent on the party feeling aggrieved to demonstrate bias or prejudice on the part of the arbitrators and if that burden is not sustained the award must be confirmed." "Federal courts have concluded that evident partiality may not be shown by alleged procedural or evidentiary errors, by legitimate efforts to move the case along, or by failing to follow the rules of evidence." Areca, Inc. v. Oppenheimer & Co., 960 F. Supp. 52, 56 (S.D.N.Y. 1997).

Here, the Perrys have failed to establish any acts of arbitrator bias or evident partiality. Further, it is also notable that they have failed to allege that they objected in the arbitration to the arbitrator's *alleged* acts because "when a neutral arbitrator is challenged [in court] for evident partiality, the issue is deemed waived unless the objecting party raised it to the arbitration panel." Delta Mine Holding Co. v. AFC Coal Properties, Inc., 280 F.3d 815, 821 (8th Cir. 2001), cert. denied, 537 U.S. 817 (2002). In short, the following excerpt from Campbell v. Cantor Fitzgerald &

Co., 21 F. Supp. 2d 341 (S.D.N.Y. 1998),[21] aptly describes a similar motion, and the Court's resulting ruling:

> [Movant] has simply not come forward with any evidence of misconduct or partiality by the arbitrators except for the fact that the arbitrators ruled against her. Indeed, [Movant] did not complain about the arbitrators or their conduct in this matter until after the adverse award was issued. Accordingly, the motion to vacate on the grounds of evident partiality and/or misconduct is denied.

Campbell, 21 F. Supp. 2d at 346. Here, the Perrys' counsel made no objection, during the hearing, to the conduct of any arbitrator.

Likewise, the Perrys empty recital of the arbitrator's "exceeding his powers" does not aid them. Because arbitration proceedings are in no way constrained by the formal rules of procedure …, procedural questions are left up to the arbitrator. First Preservation Capital, Inc. v. Smith Barney, Harris Upham & Co., 939 F. Supp. 1559, 1565 (S.D. Fla. 1996) (Ryskamp, J.). "[A]rbitrators do not 'exceed their powers' unless they rule on matters outside of their proper consideration." J.A. Jones Constr. Co. v. Flakt, Inc., 731 F. Supp. 1061, 1064 (N.D. Ga. 1990). Here, the Perrys have not established that the arbitrator chairperson ruled on any matters outside his proper consideration.

Last, the Perrys' allegation relating to vacatur under Fla. Stat. § 682.13(d)[22] is legally infirm because "conducting the hearing" in violation of another section of the FAC is not a ground for vacatur under the FAA. See 9 U.S.C. § 10(a). The instant vacatur proceeding is governed by the FAA[23] and, in such proceedings, federal law supersedes the FAC; the FAC is applied "only to the extent it is not inconsistent with federal law." Qubty v. Nagda, 817 So. 2d 952, 955-56 (Fla. 5th

---

[21] Aff'd., 205 F.3d 1321 (2nd Cir. 1999), cert. denied, 531 U.S. 992 (2000).

[22] Motion to Vacate, ¶ 29.

[23] See section III(A) above.

DCA 2002). Section § 682.13(d), as it relates to conduct of the hearing in violation of a section of the FAC is inconsistent with the FAA, and is not a proper ground for vacatur of the arbitration award at issue.

In short, the Perrys disagree with the result, so they take issue with one of the arbitrator's actions -- actions that they did not object to at the arbitration -- actions that they do not delineate to this Court – actions that they do not even attempt to substantiate with the arbitration record. Accordingly, the Perrys are not entitled to vacate the arbitration award based on grounds of arbitrator bias, misconduct, or actions exceeding his authority.

### E. Good Faith – Fair Dealing

The Perrys make a final spurious argument that, the arbitrators' award of $50,000 to John Perry on his counterclaim for breach of good faith and fair dealing, forecloses the enforcement of the notes under Florida law because "Citigroup was found in breach of the notes." Motion to Vacate, ¶ 31. This argument is simply another blank shot in the dark, without legal support, that the arbitration panel reached the wrong result on the merits. Moreover, the Perrys do not even try to cloak it with any of the covering of terms of vacatur.

### Conclusion

The Perrys' Motion to Vacate is nothing more than an "attempt to salvage [an] arbitration loss[ ] through litigation that has no sound basis in the law applicable to arbitration awards."[24] When a motion to vacate is governed by the FAA, "the district court need not conduct a full hearing on [the] motion …; [it] may be decided on the papers without oral testimony." Booth v. Hume Pub. Co., 902 F.2d 925, 932 (11th Cir. 1990). The Perrys' Motion to Vacate is inexcusably infirm,

---

[24] Quotation from B.L. Harbert Int'l, LLC v. Hercules Steel Co., 441 F.3d 905, 914 (11th Cir. 2006), abrogated on other grounds, Frazier v. Citifinancial Corp., 604 F.3d 1313, 1321 (11th Cir. 2010). As set forth above, the Eleventh Circuit has sharply condemned such post-award litigation. Id. at 913-14.

procedurally and substantively (to the extent that there is even <u>any</u> substance at all). It should be summarily denied.

Respectfully submitted this ninth day of January, 2012.

             CASEY CIKLIN LUBITZ
             MARTENS & O'CONNELL
             515 North Flagler Drive, 20th Floor
             West Palm Beach, FL 33401
             561-832-5900; fax 561-833-4209
             Attorneys for Citigroup

             //S//  Charles L. Pickett
             RICHARD L. MARTENS
             Florida Bar No.: 219908
             JASON S. HASELKORN
             Florida Bar No.: 0052140
             CHARLES L. PICKETT
             Florida Bar No.: 0051217

<u>CERTIFICATE OF SERVICE</u>

I HEREBY certify that on this ninth day of January, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other or additional manner as set forth below.

             //S//  Charles L. Pickett
             Charles L. Pickett, Esq.

<u>SERVICE LIST</u>

Michael Taaffe, Esq.
mtaaffe@slk-law.com
Jarrod Malone, Esq.
jmalone@slk-law.com
Shumaker Loop & Kendrick, LLP
240 South Pineapple Avenue
Sarasota, FL  34236
Tel.: 941-366-6660
Fax:  941-366-3999
Via CM/ECF